SCHUCHARDT (ALLEN v.). See Case No. 236.

---

## Case No. 12,483a.
SCHUCHARDT v. The ANGELEQUE.

[22 Betts, D. C. MS. 44.]

District Court, S. D. New York. Nov. Term, 1853.[1]

MARITIME LIENS—PRIOR MORTGAGE—PROCEEDS OF SALE—EQUITABLE LIENS—PRIORITIES.

[1. In a case where several libels have been filed by material men, seamen, and others against a vessel upon which there is an earlier mortgage lien, the court has no authority to compel the mortgagees to submit their interest to the order of the court, or to discharge the mortgage lien upon payment to the holders thereof of less than their full mortgage debt.]

[2. Where the holders of a prior mortgage lien on a vessel decline to appear as claimants in a suit against the vessel by material men, seamen, and others, and the vessel is sold in satisfaction of the libelants' claim, the mortgagees appearing at the sale and giving notice to the bidders of their lien, *held*, that the lien of the mortgage is not affected by the sale, the mortgagees not having submitted their interest to the jurisdiction of the court.

[Disapproved in The Hendrik Hudson, Case No. 6,358.]

[3. *Held*, further, that, had such submission been made, the court has no power to compel the parties to relinquish any part of their demand.]

[4. The mortgage holders, by a subsequent libel, are not entitled to arrest the proceeds of the sale in satisfaction of their lien, nor are they entitled to share in the distribution of the same.]

[5. Courts of admiralty have no jurisdiction to prefer claims clothed with a mere equitable character over maritime liens, nor to marshal assets for the purpose of putting equitable liens on the same footing as maritime liens.]

[6. As a general rule, maritime liens take precedence in the order of the arrest of the res, and not pro rata, or in the order of debts incurred.]

The libelants [Frederick Schuchardt and Frederick C. Gebhard] sold the ship Angelique May 7, 1853, and, in part payment of the purchase money, took from the purchaser his promissory note for $5,000, payable in six months, with a mortgage of the same date, on the moiety of the ship, to secure the payment of the note. The purchaser put up the ship for a voyage to Australia, and incurred large liabilities for materials and supplies furnished

---

[1] [Affirmed by circuit court. Case No. 12,-483c. Decree of circuit court affirmed by supreme court, in 19 How. (60 U. S.) 239.]

her in this port, and also to seamen engaged for the voyage, to freighters for cargo laden on board, and to passengers who had engaged passage on board her and made advances of money in payment thereof. On the 29th of July, 1853, a libel was filed against the ship, on a maritime contract for labor and materials supplied her in this port, upon which an attachment issued, and the cause proceeded to a decree in favor of the libelants, and condemnation of the ship to satisfy the demand and costs, upon which execution was issued. Numerous other actions were almost simultaneously prosecuted against the ship, some of which were carried forward to final decrees and to execution, and others were suspended by the fact of the sale of the vessel. On the 31st of August the marshal of this district, under the first mentioned execution, in due course of law disposed of the ship at public auction for the sum of $6,900, the highest sum bid therefor, and paid the proceeds of sale into court. At the time of the sale, and before the ship was bid off, the libelants gave notice to the marshal of their mortgage incumbrance, and that the ship still remained subject to it, which notice was also made known to the bidders and purchaser at the sale. After that sale, and before the note secured by the mortgage became due, the libelants instituted this action against the proceeds of sale now in court, praying that the one-half thereof be retained by the court to satisfy said note and mortgage, when the same should become due, if then unpaid. On the 10th of November the note was protested for nonpayment, and upon the ground that the mortgage debt yet remains unpaid and the incumbrance in force, the suit was brought on for hearing immediately thereafter.

Various creditors interposed their answers to the libel, denying that the libelants had any incumbrance upon or right to any part of the fund in court, and demanding payment of their decrees and liens, according to their legal priority, out of the fund. Other creditors having liens, and who had commenced actions by filing libels in this court against the ship, and had sued out attachments, but had not intervened in this cause, and others who had done no more than file libels, have petitioned the court to be paid out of the fund, according to their legal rights.

[An opinion was previously delivered by the court, covering in part the subjects discussed below. See Case No. 12,483a.]

Messrs. Wells and Ogden, for plaintiffs.
E. C. Benedict, for defendant.

THE COURT (BETTS, District Judge) held: First. That this court, proceeding on the instance side, in actions by material men, freighters, and passengers against the ship, had no authority to compel the mortgagees to submit their mortgage interest to the order of the court, or to take satisfaction therefor, even at its full amount; much less to order the discharge of its lien on the ship on payment to the mortgagees of less than the mortgage debt.

Second. That the mortgagees never submitted themselves, or their mortgage lien or debt, to the jurisdiction of this court, but, on the contrary, appeared at the place and time of the marshal's sale, and gave notice of the subsistence of their legal incumbrance and right against the ship.

Third. That, had such submission been made, the court of admiralty possesses no power over the creditors or their debts adequate to coerce the parties to an involuntary relinquishment or adjustment of their rights, or enabling it to fix a scale of equities between these numerous suitors, prosecuting distinct interests, or to compel any of them to forego their entire legal rights and remedies.

Fourth. That the libelants, establish no right of action against the fund in court, as the res chargeable with their debts, and that they are not entitled to arrest them, or partake in their distribution as remnants or proceeds of the ship on which they held an incumbrance, because the court has never displaced that incumbrance from the ship, and because these proceeds are more than absorbed by decrees in court directly against the ship, and they do not, therefore, continue in court, nor are they at the disposal of the court as remnants, so that the court can take cognizance of the equities thereto as between the owner of the ship and his creditors.

Fifth. That courts of admiralty have not inherently the faculty to use chancery powers or processes to compel creditors to yield legal rights, and give place to claims clothed with no more than an equitable character, nor, as a general principle, to act upon parties or interests not before it by regular course of suit, nor to coerce suitors pursuing by course of law the remedies appropriate to the jurisdiction of the court, nor others, not parties before the court, to submit to a marshaling of assets within the control of the court, for the purpose of putting equitable claims thereto on the same footing with maritime liens in suit, or legal rights.

Sixth. That, as a general principle, debts resting on a maritime privilege alone become incumbrances, and bind the res under lien, when the same is attached thereon, and not before. Accordingly, suitors in admiralty take priority of satisfaction of lien debts, in the order of the arrest of the property, subject thereto, and not pro rata, nor in the order in which the debts were incurred, nor with reference to the time of indebtment, except in the case of express hypothecation.

It is therefore ordered by the court that the libel filed in this cause by the mortgagees be dismissed, with costs. And the court, adhering to the spirit of the order in suits against the ship Angelique, entered in October term last, directs that the lien creditors,

other than the libelants, be paid out of the fund in court in the order in which their attachments were levied, respectively, and when no attachment was served in suits under prosecution, then in the order in which the actions were instituted. Should there be in court remnants of the proceeds of the said ship after satisfaction of the suits aforesaid, the court has competent authority, upon the applications before it, to direct a distribution of such remnants equitably among creditors having liens on the ship, or maritime demands against her, as against the claim or right of the owner of the ship to such fund; and, on proper motion, reference will be made to a commissioner to marshal the assets in court to that end.

[NOTE. From the decree entered dismissing the libel, an appeal was taken by the libelants to the circuit court, where the decree was affirmed, but upon a different ground, viz. that the mortgage lien had no priority over the subsequent maritime liens. The opinion of the district court upon the priorities among the several maritime liens was affirmed. Case No. 12,483c. A fee of $250 was allowed counsel for the lienholders by the district court. Id. 12,-705. The decree dismissing the libel was affirmed, upon appeal to the supreme court, upon a still different ground, viz. that the libel was in effect a suit to foreclose a mortgage. and, as such, not within the admiralty jurisdiction. The court expressed no opinion upon the conflicting points in the opinions of the district and circuit courts. 19 How. (60 U. S.) 239. The Ocean Mutual Association Company, who claimed to be subrogated to the rights of Schuchardt and Gebhard, filed a petition in the circuit court, after the decision of the supreme court, seeking a review of the district court decrees for the purpose of appearing as claimants in the original actions. The court held that the holders of the several maritime liens had priority over the mortgage by the maritime law, and that such a petition, seeking to establish the mortgage against their liens, could not be allowed. Case No. 12,483d. This last decision pointedly overrules the opinion of Judge Betts upon this point, in this case and in Case No. 12,483b.]